No. 21,957.

THE ATCHISON SAVINGS BANK, *Appellant,* v. W. A. POTTER, *Appellee.*

### SYLLABUS BY THE COURT.

PROMISSORY NOTE—*Procured by False Representations—Plaintiff Not an Innocent Holder—Knowledge of Agent.* The proceedings considered, and held that the plaintiff was not a holder of the promissory note sued on, without notice of infirmity in the paper, because of knowledge which an agent in charge of its interests possessed that the note was obtained by false representations for shares of stock in an insolvent bank.

Appeal from Logan district court; JACOB C. RUPPENTHAL, judge. Opinion filed March 8, 1919. Affirmed.

*C. L. Kagey,* of Beloit, for the appellant.

*H. A. Russell,* of Scott City, for the appellee.

The opinion of the court was delivered by

BURCH, J.: This is a second appeal. The nature of the controversy is sufficiently indicated in the former opinion, *Bank v. Potter,* 100 Kan. 407, 164 Pac. 149. At the second trial the defendant's case was materially strengthened, and the jury properly returned special findings of fact in his favor covering all the issues, with the general verdict.

The plaintiff had financial relations with the Russell Springs bank which were jeopardized by the recklessness with which it was managed. Besides this, officers and stockholders of the plaintiff owned stock in the Russell Springs institution. As far back as February, 1911, the plaintiff, in correspondence with the bank commissioner, stated that it had remonstrated with Harwi, the cashier of the Russell Springs bank, concerning the unwisdom of his methods and policies, and stated that it desired to coöperate with the bank commissioner in remedying the conditions. In February, 1912, a deputy bank commissioner reported violations both of law and of sound banking. On June 4 the bank was in an embarrassed condition, and the bank commissioner threatened to assume its management. At that time the Russell Springs bank owed the plaintiff between forty and fifty thousand dollars. On June 20 the bank commissioner forbade the making of further loans and the creation of further overdrafts. On the same day the bank commissioner communicated with the plaintiff's president, and on June 24 the plaintiff wrote the following letter to the bank commissioner:

"ATCHISON, KAN., June 24, 1912.

"*Hon. J. N. Dolley, State Bank Commissioner, Topeka, Kan.:*

"DEAR SIR—This will introduce the bearer, Mr. Rollin Buell, who we wish to represent us in the Russell Springs matter.

"Yours respectfully,     T. M. WALKER, *President."*

On June 24 the bank commissioner ordered the Russell Springs bank to remove Harwi as cashier. What ensued is indicated by the following extracts from the report of the assistant bank commissioner:

"JUNE 27, 1912.

*"Hon. J. N. Dolley, Bank Commissioner, Office:*

"DEAR SIR—In connection with Mr. Buell, representing the Atchison Savings Bank of Atchison, Kan., on Tuesday, the 25th inst., I left Topeka for Russell Springs. Arriving at Russell Springs, I demanded and received the resignation of H. J. Harwi, as cashier of that bank, and later called a special meeting of the board of directors, at which Mr. Buell was elected acting cashier, all of which is duly recorded in the minute book of that bank.

"I then proceeded to make an investigation of the affairs of that bank, and after posting up four days' work, which was undone, reached the following conclusion as to their resources and liabilities:

. . . . . . . . . . . . .

"First, you will note that their legal reserve is approximately 2⅞ per cent. This necessitated quick action, and acting on the understanding that Mr. Walker would protect the bank, I caused to be forwarded to him for sale sundry real-estate notes, amounting to $4,100. At the same time, Mr. Buell wired the Atchison Savings Bank to ship $1,500 in currency, in order to meet the demands of customers, who will in all probability wish to withdraw their balances, immediately the change in officers becomes known.

. . . . . . . . . . . .

"Owing to the above and foregoing statement of conditions existing in that bank, I believe it would be well to offer the following suggestions to Mr. Walker, although in view of his expressed willingness and intention to assume the liability to depositors of that bank, he is at liberty to disregard same:

. . . . . . . . . .

"Third, that stock transfers be discontinued pending final determination of the value of assets of that bank, except that sufficient stock be transferred to Mr. Buell to qualify him as cashier.

. . . . . . . . . .

"Very truly yours,        (Signed)    S. A. WARDELL,
                    *Ass't Bank Commissioner."*

On June 27 the bank commissioner advised the plaintiff's president of the action taken at Russell Springs, and inclosed a summary of the assistant bank commissioner's report. On July 9 the bank commissioner wrote the plaintiff as follows:

"JULY 9, 1912.

*"Mr. T. M. Walker, President, The Atchison Savings Bank, Atchison, Kan.:*

"DEAR SIR—I am handing you herewith letter received from Mr. Buell, of Russell Springs. . . . Somehow, there appears to me to be altogether too hopeful a vein running through this letter, as it indicates in a measure that he is being somewhat influenced by the optimistic views

of Mr. Harwi. In case you can find it convenient to do so, I would suggest that you take this matter up with him, and attempt to overcome the influence under which he is working.

"Yours very truly, ·  (Signed)     J. N. DOLLEY,
                                           *Bank Commissioner.*"

.This letter was answered by the plaintiff's cashier as follows:

                                        "JULY 11, 1912.
*"Hon. J. N. Dolley, State Bank Commissioner, Topeka, Kan.:*

DEAR SIR—Yours of the 9th enclosing Rollin Buell's letter regarding the conditions at Russell Springs.

"We realize how you feel concerning that point, as we were of about the same opinion as I imagine you are, until our Mr. P. G. Walker [the plaintiff's vice-president] went out there for the express purpose of sizing up the situation.

"Buell is a man who forms his own opinions regardless of his surroundings, and we are forced to admit, and glad to do so, that Mr. Walker found the conditions exactly as set forth by Mr. Buell.  .  .  .

"We return herewith Mr. Buell's letter.

"Yours respectfully,
                  (Signed)      F. M. WOODFORD, *Cashier.*"

On July 3 Buell went with Harwi, the deposed cashier, and Bowie, the president of the Russell Springs bank, to the defendant's farm. A conversation took place, which resulted in the defendant buying the stock in the Russell Springs bank which belonged to T. M. Walker, the plaintiff's president. The sale was induced by false and fraudulent representations made by Bowie, who did the talking while Buell stood by, and the defendant paid for the stock by giving directly to the plaintiff the note sued on. The bank was then insolvent, the stock was of no value, and the transfer was not immediately reported to the bank commissioner, as the law requires. On September 7, more than sixty days later, the bank commissioner was notified, at which time the sales of 130 shares were reported, including those owned by the plaintiff's stockholders.

The plaintiff was virtually in charge of the Russell Springs bank, through its agent, Buell. Buell was introduced to the bank commissioner, and was made cashier by the bank commissioner, as the plaintiff's representative. Buell's function was to protect the plaintiff's interests. He knew all about the bank's condition and prospects. The institution was already on the rocks, and the furtive shifting of stockholders

was a matter which directly concerned the subject of his agency. The statute forbidding transfer of shares of stock of a failing bank was enacted for the benefit of his principal as a creditor of the Russell Springs bank. (See former opinion, syl., ¶ 4.) He was a member of the party which made the predatory incursion against the defendant. He stood by while the note to his principal was obtained from the defendant by fraudulent representations, in exchange for shares of stock, and his principal is not permitted to deny knowledge of the fraud. The plaintiff was not a holder without notice of the infirmity in the paper.

There is nothing else of importance in the case. Evidence of other frauds in the sale of other stock for notes to the plaintiff was relevant. It is sufficient to say, without discussing the evidence, that the defendant did not waive his right to insist on the defense of fraud. The evidence quoted and the findings of fact render discussion of the instructions given and refused unnecessary.

The judgment of the district court is affirmed.

DAWSON, J., did not participate in the decision.